```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

ALABANZA CORP.                    *

         Plaintiff                *

     vs.                          *  CIVIL ACTION NO. MJG-02-1946

ABACUS AMERICA, INC.              *

         Defendant                *

*    *    *    *    *    *    *    *    *
```

## MEMORANDUM AND ORDER

The Court has before it Defendant Abacus America Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and the materials submitted by the parties in relation thereto. The Court finds a hearing unnecessary.

I.   BACKGROUND[1]

At all relevant times, Alabanza Corp. ("Plaintiff" or "Alabanza") has been a Maryland Corporation engaged in providing software and Internet hosting services. Also at all relevant times, Abacus America Inc. ("Defendant" or "Abacus") has been a California corporation engaged in providing Internet-related services.

---

[1] In the instant context, the facts must be taken in the light most favorable to the Plaintiff.

Until May 2002 Cedant, Inc. ("Cedant") was a California Corporation engaged in the business of providing Internet services.[2] At some point prior to April 16, 2002,[3] Christopher Lober ("Lober"), left the employ of Alabanza to work for Cedant, allegedly taking with him proprietary software owned by Alabanza ("the Software").  On April 16, 2002, while employed by Cedant, Lober used the Software to access the Alabanza computer system and to develop software for Cedant.

On or about March 1, 2002, Abacus entered into an agreement to purchase Cedant.  The transaction was finalized on May 7, 2002.  Cedant remained in existence as a wholly-owned subsidiary of Abacus.  See Pl's Surreply at ¶¶4-6, Ex. 1.  Thereafter, Alabanza alleges, Abacus began using the Software that Alabanza claims constitutes a trade secret.

Abacus has moved for dismissal due to the absence of contacts with Maryland sufficient to subject it to personal jurisdiction in that State.

---

[2]   Cedant remains a California Corporation engaged in Internet business; however, it was purchased by Abacus in May 2002, and is now a wholly-owned subsidiary of Abacus.

[3]   Neither party has submitted the date of termination of Lober's employment with Alabanza nor his start date with Cedant.

2

II.  **LEGAL STANDARD**

The Court's determination of the exercise of personal jurisdiction over Defendant is a two-step process.  First, the Court must determine whether the state's long-arm statute authorizes jurisdiction.  Second, the Court must determine whether the exercise of jurisdiction, if authorized by the statute, is consistent with the due process requirements of the Fourteenth Amendment.  See Mohamed v. Michael, 279 Md. 653, 657 (1977).  The Court must look to Maryland law to determine whether the long-arm statute confers jurisdiction and to federal law to determine whether the exercise of personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment.  See Snyder v. Hampton Indus., Inc., 521 F.Supp. 130, 135 (D. Md. 1981), aff'd, 758 F.2d 649 (4th Cir. 1985).  The relevant section of the Maryland long-arm statute expands the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment. See Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993).  The normal two-step analysis merges into one and thus, this Court must examine whether the exercise of personal jurisdiction is consistent with due process.  See Ellicott Mach. Corp., 995 F.2d at 477.

In order for the Court properly to exercise personal jurisdiction, the defendant must have certain minimum contacts with Maryland such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted).  For these minimum contacts to exist, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).  See also Hanson v. Denckla, 357 U.S. 235, 1259 (1958).  In light of such contacts the court must consider factors such as the burden on the defendant, the plaintiff's interest in obtaining convenient and effective relief, the forum state's interest adjudicating the dispute, and the interstate judicial system's interest in obtaining efficient resolution of controversies.  See Burger King Corp., 471 U.S. at 476-77.

A distinction must be drawn between specific jurisdiction and general jurisdiction.  See, e.g., Bass v. Energy Transp. Corp., 787 F.Supp. 530, 534 (D. Md. 1992). When a court seeks to exercise specific jurisdiction, the cause of action must arise out of defendant's minimum contacts with the

4

forum.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  When the cause of action is unrelated to the defendant's contacts with the forum state, the court may exercise general jurisdiction upon a showing that the defendant's contacts are of a continuous and systematic nature.  See id. at 416.  The general jurisdiction threshold is higher than that required for specific jurisdiction.

Under principles of general jurisdiction established pursuant to Maryland law, a defendant's contacts with Maryland "must be sufficiently extensive, continuous, and systematic in order to satisfy Maryland's (b)(4) statutory requirements of 'overall fairness.'" Bass, 787 F.Supp. at 535 (quoting Goodyear Tire & Rubber Co. v. Ruby, 540 A.2d 482 (1988)). See, e.g., Rossetti v. Esselte-Pendeflex, 683 F.Supp. 532, 534 (D. Md. 1988)("When jurisdiction is asserted over a claim which does not arise out of a defendant's contacts with the forum state, the defendant's contacts with that forum must be 'fairly extensive.'")(quoting Wolf v. Richmond County Hosp. Auth.,745 F.2d 904, 909 (4th Cir. 1984)).  The court must examine the quality and nature of the defendant's activity in the forum state.  The defendant must act in such a way that it "purposefully avails itself of the privilege of conducting

activities within the forum state, thus invoking the benefits and protections of its laws." Poole & Kent Co. v. Equilease Assocs. I, 523 A.2d 1018, 1024 (Md. Ct. Spec. App. 1987)(citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)). The Fourth Circuit has commented that "[b]ecause specific jurisdiction has expanded tremendously, . . . [and] plaintiffs now may generally bring their claims in the forum in which they arose[,] . . . broad constructions of general jurisdiction should be generally disfavored." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993) (citations omitted).

III.   DISCUSSION

   A.   THE LONG-ARM STATUTE

   Maryland's Long-Arm Statute provides, in pertinent part:

> (a) Condition: If jurisdiction over a person is based solely on this section, he may only be sued on a cause of action arising from any act enumerated in this section.
>
> (b) In general: A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>      * * *
>
>    3.   Causes tortious injury in the state by an act or omission in the state;

6

> 4. Causes tortious injury in the state by an act or omission outside the state if he regularly does or solicits business, engages in any other persistent course of conduct in the State, or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state....

Md. Code Ann (Cts. and Jud. Pro.) §6-103.

    a.    <u>Actions in Maryland - §6-103(b)(3)</u>

Plaintiff contends that jurisdiction is properly premised under Section (b)(3) because "some of [the alleged acts], such as the illegal entry into Alabanza computer systems or the taking of copies of Alabanza software, occurred within the state." Pl's Opp. at 3 (unnumbered). The problem is that these alleged actions were taken by Lober as an agent of Cedant prior to the acquisition of Cedant by Abacus. Plaintiff argues that in acquiring Cedant, Abacus "succeed[ed] to all of the debts and liabilities of the acquired entity," thus rendering Abacus responsible for Cedent's torts for jurisdictional purposes.

While Plaintiff is correct that when a merger is effectuated, a successor corporation may be liable for the acts of its predecessor, and that personal jurisdiction over

7

the successor may be premised on those acts, such an analysis does not apply where, as here, the "successor" corporation is not merged into the predecessor, but instead remains separate, operating as a wholly-owned subsidiary.  In such cases, the Fourth Circuit has adopted an "agency" test in deciding whether to pierce the corporate veil and hold the parent liable for the actions of its subsidiary.  See <u>Mylan Laboratories v. Akzo</u>, 2 F.2d 56, 61-62 (4th Cir. 1993).  Pursuant to that analysis, a parent company is liable for the actions of its subsidiary "only if the parent exerts considerable control over the actions of the subsidiary."  <u>Id.</u>  Further, the Fourth Circuit stated that, in order to assert jurisdiction over the parent, "the court must find that [the parent] knew, or should have known, that its conduct would have some impact in Maryland."  <u>Id.</u>

Because Abacus had not even acquired Cedant at the time that the alleged misappropriation occurred, there existed no parent- subsidiary relationship at the time of alleged illegal actions that could serve to confer jurisdiction.  Thus, it would be impossible for Abacus to "know... that its conduct would have some impact on Maryland."

Moreover, Abacus has submitted affidavits establishing that Cedant operates as a separate entity from Abacus, and

8

that Abacus does not control daily operations of Cedant or "approve decisions of Cedant's management."  See Def's. Surreply at Ex. 1C; Aff. of Ivan Vachovsky at ¶25.  Thus this Court does not find that Abacus, particularly with regard to Cedant's acts that are implicated in this lawsuit, exercised sufficient control over Cedant to justify exercising jurisdiction over Abacus on the basis of Cedant's alleged tortious actions in Maryland.

      b.    <u>Actions Outside Maryland - §6-103(b)(4)</u>

The Complaint asserts that Abacus, by allegedly knowingly using its trade secrets, has committed tortious acts outside of Maryland that caused injury in Maryland.  Under 6-103(b)(4), the Court would have jurisdiction over Abacus as to such tortious acts if Abacus "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from... products used or consumed in the State."  Md. Code Ann (Cts. and Jud. Pro.) §6-103 (a)(4).

Abacus does not solicit business specifically from Maryland; its only relevant marketing efforts consist of Internet advertising and print advertising in some national publications.  Nor does Abacus "regularly" do business in

9

Maryland. While Abacus has a few customers that are located in Maryland, making up approximately 3.5% of its customer base, its business is conducted over the Internet. Abacus' contact with its Maryland customers does not occur in Maryland, but in the form of billing invoices and emails.

Mere purchases of a defendant's product in the forum state, where those particular purchases are not themselves related to the cause of action, are not sufficient to "warrant a State's assertion of in personam jurisdiction" over that defendant. Helicoptieros Nationales de Columbia v. Hall, 466 U.S. 408, 418 (1984) ; see also Smith v. Jefferson County Chamber of Commerce, 683 F.Supp. 536, 537-38 (D. Md. 1988) (refusing to exercise jurisdiction under both the Due Process clause and Section (b)(3) of the Long-Arm Statute where defendants sold products to Maryland customers from a Virginia location, made purchasing trips to Maryland, and derived a 30 to 40% of revenue from Maryland customers). Here, Abacus' customer base in Maryland constitutes approximately 3.5% of its total customer base, amounting to only 2.9% of its revenue. Further, all of Abacus' Maryland customers are serviced over the Internet, without requiring any physical presence of Abacus or its agents in Maryland.

The Court concludes that Plaintiff has failed to establish that Abacus "engaged in a persistent course of conduct in the state" or "regularly" did or solicited business in Maryland.  Accordingly, there is no jurisdiction over Abacus under §6-103(b)(4).

### B.   DUE PROCESS CONSIDERATIONS

Because the Court has found that Abacus' activities in Maryland do not justify the exercise of jurisdiction over Abacus under Maryland's Long-Arm Statute, it is unnecessary to discuss whether subjecting Abacus to this Court's jurisdiction would comport with the mandates of due process.

The Court will note, however, that if required to decide the issue, it would conclude that subjecting Abacus to jurisdiction in Maryland in the instant case would be inconsistent with due process requirements of "fair play and substantial justice."  International Shoe, 326 U.S. at 316.

### IV. CONCLUSION

For the foregoing reasons:

1. **Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.**

2. **Judgment shall be entered by separate Order.**

**SO ORDERED, on Wednesday, March 5, 2003.**

                                                /s/
                            _____
                                    Marvin J. Garbis
                             United States District Judge