UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALABANZA CORPORATION,          : | |
|           Plaintiff,          : | |
|                               : | |
| v.                              : | Civil Action No. MJG 02 CV 1946 |
|                               : | |
| ABACUS AMERICA, INC.,          : | |
|           Defendant.          : | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR RECONSIDERATION

BACKGROUND

On March 5, 2003, this Court granted Defendant Abacus America, Inc.'s ("Abacus'") Motion to Dismiss based on lack of personal jurisdiction. Central to that decision was the finding that only a small percentage of Abacus' sales were in Maryland. The Court implicitly refused to permit jurisdictional discovery. Both errors compel the reconsideration of the March 5, 2003 Order, as both constitute reversible error.

Plaintiff Alabanza Corporation ("Alabanza") filed suit against Abacus in June 2002, alleging violations of the Maryland Uniform Trade Secrets Act (MUTSA), codified at Md. Code Ann., Com. Law. §11-1201 et seq. and asserting common law claims. The institution of legal proceedings arose out of the theft of certain trade secrets of Alabanza by a former employee working for Cedant Inc. Cedant was then in the process of being acquired by Abacus. It is Alabanza's contention that Abacus misappropriated Alabanza's trade secrets when it acquired Cedant's assets, and that the misappropriation continues to this day, causing injury to Alabanza in the State of Maryland.

ARGUMENT

Legal Standard

A motion for reconsideration is appropriate to "correct manifest errors of law or fact or to present newly discovered evidence," See Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d. Cir. 1986) (quoting Keene Corp. v. International Fidelity Insur. Co., 561 F. Supp. 656, 665 (N.D. Ill. 1983), or where there has been an intervening change in controlling law. See Shields v. Shelter, 120 F.R.D. 123, 126 ( D. Co. 1988); Above the Belt, Inc., v. Bohananon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

By its Order of March 5, 2003, this Court adjudicated Abacus' Motion to Dismiss without a hearing. It is well settled that Alabanza only had to make a prima facie case of personal jurisdiction in order to defeat the motion. See Robbins v. Yutopian Enterprises, Inc., 202 F.Supp.2d 426 (D. Md. 2002); Burns & Russell Co. of Baltimore v. Oldcastle, Inc., 166 F.Supp.2d 432 (D. Md. 2001), citing Choice Hotels, Int'l, Inc. v. Madison Three, Inc., 23 F.Supp.2d 617, 619 & n. 1 (D.Md. 1998); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56,60 (4th Cir. 1993); and Blue Ridge Bank v. Veribanc, Inc., 755 F.2d 371, 373 (4th Cir. 1985). Alabanza met that standard by using Abacus' own admissions to show Abacus had over 1200 customers in Maryland, derived substantial revenue in the State, and availed itself of the benefit of doing business in the State. Yet nowhere in the Order does the Court acknowledge the lesser standard imposed upon Alabanza; furthermore, that lesser standard is not applied to the facts of this case. Furthermore, in rendering its decision, the court must "draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Robbins v. Yutopian Enterprises, Inc., 202 F.Supp.2d 426 (D. Md. 2002), citing Mylan Labs., Inc. v. Akzo,

N.V., 2 F.3d 56,60 (4th Cir. 1993).  Yet the Court borrows wholesale from the Defendant's pleadings without addressing the contentions raised by the Plaintiff with regard to the extent of Abacus' operations in Maryland.

Alabanza therefore asks that this Court reconsider its decision, to review the facts of this case to determine whether Alabanza has in fact made a prima facie case of personal jurisdiction over Abacus, and to permit jurisdictional discovery if it has any doubts as to the presence of Abacus in Maryland.

<u>Abacus' Contacts with Maryland and Its Knowledge of the Theft of Alabanza's Trade Secrets Should Subject It to Personal Jurisdiction in Maryland</u>.

The issue of whether personal jurisdiction exists is a factually specific determination that must be made in every instance.  Depending on the facts of the case, personal jurisdiction under §6-103 can be premised upon either specific or general jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Camelback Ski Corp. v. Behning</u>, 312 Md. 330, 339, 539 A.2d 1107 (1988), and cases cited therein.  However, as the Maryland Court of Appeals noted:

> [s]ome cases fit neatly into one or the other category. Asahi [Metal Industry Co., Ltd. v. Superior Court of California, U.S., 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)] was clearly a specific jurisdiction case -- the cause of action arose out of the only contact that Asahi had with the forum State. Similarly, McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), involved a claim arising out of the issuance and delivery of a single life insurance policy by a Texas insurance company to a California resident, and was therefore a case involving specific jurisdiction. By way of contrast, Perkins v. Benguet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), involved a cause of action that did not arise out of, or relate to, the activities of the defendant in the forum State, and was therefore a general jurisdiction case. The concept of specific and general jurisdiction is a useful tool in the sometimes difficult task of detecting how much contact is enough, and most cases will fit nicely into one category or the other. If, however, the facts of a given case do not naturally place it at either end of the spectrum, there is no need to jettison the concept, or to force-fit the case. In that instance, the proper approach is to identify the approximate position of the

case on the continuum that exists between the two extremes, and apply the corresponding standard, recognizing that the quantum of required contacts increases as the nexus between the contacts and the cause of action decreases.

Camelback Ski Corp, 312 Md. at 339.

The instant case is one that falls into the gray area described above. However, in its March 5th Order, this Court ignored the factual allegations made by Alabanza, accepted the facts alleged by Abacus, and concluded that it had neither specific nor general jurisdiction over the Defendant.

The Court apparently misunderstood both the extent of Abacus' contacts with Maryland and the nature of the injury to Alabanza caused by the theft of its trade secrets when it concluded that jurisdiction did not exist. Further, its bare recital of Abacus' contacts with Maryland does not truly consider the specific facts of the case and their relation to the cause of action and the forum.

Abacus admits that it derives 2.9% of its annual revenue (approximately $340,000) from Maryland residents. See Vachovsky Affidavit dated August 23, 2002. It further admits that Maryland residents and businesses comprise approximately 2.4% of its ongoing customer base, or over 1200 individual customers. See Vachovsky Affidavit dated August 23, 2002. It begrudgingly admitted to performing direct mailings to Maryland residents (albeit only after being confronted with one of the documents it earlier denied sending). See Vachovsky Affidavit dated September 18, 2002. Abacus further admits to attending a trade show in Maryland in an obvious attempt to do business within this State. See Vachovsky Affidavit dated August 23, 2002. When faced with this panoply of jurisdictional contacts, this Court seemed to conclude that no finding of jurisdiction could be premised because these contacts allegedly constituted a small

percentages of Abacus' total customer base and revenues. See Order, p. 10. By this reasoning, jurisdiction would have nothing to do with actual contacts, but would be a function of internal corporate accounting expressions.

The Court should not have dismissed the complaint on that basis without considering the quantity and quality of Abacus' contacts with Maryland and the specific circumstances of the instant case. And at least one other court has found that jurisdiction existed although the customers of the forum state made up only 2% of the defendant's customer base. See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp.2d 1119, 1121 (W.D. Pa. 1997).[1]

A second basis for the Court's decision involved the status of Cedant in relation to Abacus during the relevant time period. See Order, p. 8-9. Even if Abacus' assertion that it had not completed its acquisition of Cedant at the time of the initial misappropriation by Mr. Lober in April 2002 is correct, it is erroneous to conclude that Abacus is somehow absolved from responsibility for misappropriation of Alabanza's trade secrets, unless the Court makes specific findings as to the degree of control of Cedant enjoyed by Abacus during the relevant time period.

Furthermore, under MUTSA, misappropriation includes:

(1)   Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2)   Disclosure or use of a trade secret of another without express or implied consent by a person who:

---

[1] Indeed, if Abacus' sales were spread evenly over all fifty states, only 2% of its sales would be derived from Maryland. Under the Court's analysis, there would be no jurisdiction anywhere but California. Furthermore, under the Court's analysis, it would have dubious jurisdiction over large companies like Microsoft, which may state some arbitrary percentage regardless of thousands of customers and billions of dollars of sales within Maryland.

\* \* \*

> (ii) <u>At the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:</u>
>
> > 1. <u>Derived from or through a person who had utilized improper means to acquire it</u>[.]

Md. Code Ann., Com. Law § 11-1201(c) (emphasis supplied).

Alabanza contends that the trade secret was passed from Mr. Lober to Cedant, and from Cedant to Abacus, during the acquisition process or shortly thereafter. Abacus admits that it knew that Alabanza had proprietary technology. <u>See</u> Vachovsky Affidavit dated June 10, 2002. Further, during the due diligence process, Abacus would have learned that Cedant had gained improper access to that very technology, which then was transferred to Abacus during or after the acquisition.[2] Alabanza alleges that its trade secrets continue to reside on Abacus servers, so the violation of MUTSA is ongoing, with injury to Alabanza continuing to occur within Maryland.

<u>The Court Should Have Stayed Its Ruling on the Motion to Dismiss Until Alabanza Was Allowed to Conduct Jurisdictional Discovery Regarding the Status of Cedant and the Extent of Abacus' Contacts with the State of Maryland</u>.

In granting Abacus' Motion to Dismiss, the Court rejected Alabanza's argument that Abacus is subject to the jurisdiction of a Maryland court on the theory that its predecessor-in-interest, Cedant, was in fact subject to that jurisdiction. This Court accepted Abacus' claim that Abacus was not Cedant's corporate successor and that Cedant continues to operate as a wholly-owned subsidiary of Abacus. <u>See</u> Order, P. 8. Under Maryland law, the parent is only liable for actions of the subsidiary on a piercing

---

[2] In fact, Alabanza believes that Cedant's possession of the misappropriated trade secrets was a further incentive for Abacus to acquire Cedant.

the corporate veil theory.  See Mylan Laboratories v. Akzo, 2 F.2d 56, 61-62 (4th Cir. 1993).  This requires the plaintiff to show that the parent "exerts considerable control over the actions of the subsidiary" and that the parent "knew, or should have known, that its conduct would have some kind of impact in Maryland."  Id.  Alabanza argued that Abacus controlled Cedant before the final closing date.  Based on portions of documents and affidavits submitted by Abacus, the Court concluded that Alabanza did not satisfy this standard.  See Order, p. 8-9.

However, in light of the fact that Abacus is in sole possession of the majority of the facts relevant to this issue (and has disclosed only those facts favorable to its position), this Court should have allowed Alabanza to conduct jurisdictional discovery.  See Burns & Russell Co. of Baltimore v. Oldcastle, Inc., 166 F.Supp.2d 432 (D. Md. 2001); Mylan Labs., Inc. v. Akzo, 2 F.3d 56, 64 (4th Cir. 1993); McLaughlin v. McPhail, 7-7 V.2d 800, 806-07 (4th Cir. 1983).  The Motion to Dismiss should have been stayed pending the outcome of such discovery, considering that "the facts bearing on the question of jurisdiction are genuinely in dispute."  See Burns & Russell Co. of Baltimore v. Oldcastle, Inc., 166 F.Supp.2d 432 (D. Md. 2001).  Facts that could have been elaborated upon were, for example, the identities of management of Cedant and Abacus; customer records supporting or refuting Ivan Vachovsky's contentions with respect to the revenue derived from the 1200 Maryland customers; and whether Abacus did in fact control Cedant prior to the final closing date.  Absent the ability to seek documentation on these issues, Alabanza had no way to challenge Abacus' assertions, because all of the information is in the possession of Abacus.

Furthermore, the Court has not considered the rule of <u>Mylan Labs</u> as applied to the specific facts of this case. For example, Abacus admits that it signed an agreement with Cedant on March 1, 2002. That agreement evidences Abacus' intent to acquire all stock and certain assets owned individually by the stockholders. While the transaction between Abacus and Cedant was formally closed on May 7, 2002, Abacus admitted that it discovered during the due diligence process that Cedant outsourced its web hosting to Alabanza and that Alabanza used proprietary technology. <u>See</u> Affidavit of Ivan Vachovsky, dated June 10, 2002. During this time, it is also reasonable to presume that Abacus would have discovered the misappropriation of Alabanza's trade secrets, and if so, then knew or should have known that Abacus' use of Alabanza's trade secrets would have a decidedly negative impact on Alabanza in Maryland. In addition, Abacus admits that it hosts Cedant's web hosting customers on Abacus' servers. <u>See</u> Affidavit of Ivan Vachovsky, dated February 12, 2003.

<u>The Court Erred in Concluding that Web-Based Businesses Like Abacus Cannot be Subject to a State's Personal Jurisdiction</u>

According to its Order of March 5, 2003, this Court appears to conclude that Abacus is not subject to the jurisdiction of Maryland courts under Md. Code Ann., Cts. & Jud. Pro. § 6-103(a)(4)[3], in part because its business is conducted over the Internet and

---

[3] The relevant provisions of Maryland's long-arm statute apply to any party who:

(1) Transacts any business or performs any character of work or service in the State; . . . [or] (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State. Md. Code Ann. Cts. & Jud. Proc. § 6-103(b)(1) & (4).

therefore it has no physical presence in Maryland.  See Order of March 5, 2003, at p. 10.  Alabanza is unaware of any cases establishing such a hard and unsound rule.  In fact, courts have acknowledged that a defendant can be found to have been doing business through its web site, in the absence of a physical presence in the state seeking to exercise jurisdiction.  See, e.g., Toys "R" Us v. Step Two SA, No. 01-3390 (3rd Cir. 1/27/2003); Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997).  As noted above, there are not sufficient facts available to Alabanza at this time for it to establish the scope of Abacus' business activities in Maryland.  For these reasons, the Court's ruling was, at least, premature.

## CONCLUSION

In this case, Alabanza had only to make a prima facie showing of jurisdiction in order to survive Abacus' motion to dismiss; further, it should be given the opportunity to conduct a limited jurisdictional discovery in order to present facts supporting a finding of jurisdiction.  For these reasons, Alabanza respectfully requests that this Court reconsider its previous order and deny Abacus' motion to dismiss.

_____
Patrick J. O'Brien
O'Brien & Hickey
7307 MacArthur Blvd.
Suite 206
Bethesda, Maryland 20816
(301) 263-9270
Attorneys for Plaintiff
Alabanza Corporation